2020-12-67, Mr. Baines. Good morning, distinguished members of the panel, and may it please the Court. This is Bryant Baines, arguing for the appellant, Advanced Powder Solutions. Your Honors, there were two issues that we're here to ask the Court to decide today. The first one is whether the ASPCA erred when it dismissed a case's moot after a contracting officer withdrew a final decision, but a challenge to that practice remained, and especially whereas here the government claimed that the claim that it was unsubstantiated was wrong and that it was, and it disputed that it was being withdrawn. Is it your argument that whenever a motion for summary judgment is pending that a facts of the case dictate that the challenge practice remained for several reasons? One, the voluntary cessation doctrine applies here, and the Board or the government did not unequivocally withdraw the claim and say that it would not bring it again as the Board had required in prior cases. Secondly, when you look at the motion for summary judgment and then the government's issues of disputed fact that were raised below, we cited the amended contracting officer's final decision that accepted the indirect rates and said that there shouldn't have been any issue of disputed fact about that summary judgment was appropriate because there was no material fact raised. Is the only thing that you're pointing to indicate that it's not unequivocally withdrawing the May 2019 proposed deferment agreement? No, Your Honor. We're also pointing to the government's response to the motion for summary judgment at appendix 126. The first line of that says the government disputes that the amended COFD established that the MDA contract claims and COFD, quote, were unsubstantiated and being withdrawn. So they actually disputed both things. Well, what was the timing of that response? The timing of that response was at or around the same time as the motion to dismiss was being briefed and decided. So these were contemporaneous motions. They were being argued and briefed at the same time. The other issue, Your Honor, is that when you look at the deferment agreement, it's very problematic in this context. It acknowledges the prior debt, and I'm looking at appendix 174, but it acknowledges the prior debt of $350,000 and change. It also says in appendix 174, the contractor agrees to pay the government the debt. So it acknowledges the debt. And then most problematic is that it says, if the appeal is withdrawn or dismissed by the ASBCA without decision, the contractor agrees to pay the government the debt. So, and then... Well, let me back up. Didn't the court find that that deferment agreement likely represented a mistake? No, Your Honor, the government... I'm sorry, Your Honor. No, the government did not. In fact, they confirmed it. They confirmed the number. You know, we first raised it to the government directly, to the contracting officer directly, and then in our briefing on the motion to dismiss, we raised this issue, and that's at page... that's at appendix 166... excuse me, 166 through 174, Your Honor. But we raised that, and the government... we raised it first to the contracting officer and said, this is an error. Please change this. We don't want to acknowledge this debt, and we're worried that you're going to seek dismissal, and then we're going to have to pay it, or we're going to have to set aside money, as the last paragraph requires, on page 175 of the appendix. The contracting officer did not respond to it, and then in the briefing, the government just continued and said in response to it that it was beneficial somehow. They did not argue that it was a mistake, and they did not argue any of the other factors. In fact, that's the most critical point here, Your Honor. In our initial... in our briefing, in footnote one on page 23, we raised an issue of the Chenery Doctrine. The government, in this case, argues no less than five things that it did not argue or raise below, and under the Chenery Doctrine, the government cannot defend a case on a basis that it did not raise before the government did not raise below. It did not raise that the Voluntary Cessation Doctrine does not apply to the board. In fact, it disputed, as I pointed out earlier, in its opposition to the Motion for Summary Judgment in Appendix 126, it actually disputed that the contracting officer's final decision was withdrawn. It had a full opportunity to say it was a mistake, an error, but instead it confirmed the number and said we're going with that. The second thing it did, it didn't raise... the government didn't raise below. It did not assert, and it provided no evidence that the deferment agreement was a typo. The board had no evidence... Oh, I'm sorry. Counsel, on February 11, 2019, wasn't there in fact a decision withdrawing the overpayment claim? It withdrew it, Your Honor, but it didn't unequivocally withdraw, and it did not promise to not bring it again. Yeah, but it didn't have to do that. There was no requirement that it did. It was a decision, and why didn't that decision determine, move your claim, and therefore why shouldn't we just send it back to the board and say attend to the final technical detail and dismiss the summary judgment motion? Well, Your Honor, if the voluntary cessation doctrine applies to any challenge conduct, and in this case, if the government is able to willy-nilly just withdraw the claim or reinstate it, or in this case with the deferment agreement, have a contractor acknowledge it again even after it's been withdrawn, that is very problematic. Is it the voluntary cessation doctrine directed to, as you said, conduct, is to enjoin particular behavior by an agency or action that's being contemplated by a governmental body, but does it actually apply in situations dealing with a contractor? Absolutely, Your Honor. In CCL, this court applied it to a procurement, and in Chapman, this court applied it to a procurement violation as well. So the voluntary cessation doctrine applies to any challenge conduct. Here there was a final decision that was incorrect enough, unsubstantiated, and we had challenged it on a motion for summary judgment. The board didn't lose jurisdiction. As Judge Clark ruled in 2019 in the L3 case, the board doesn't lose jurisdiction merely when a COFD, when a final decision is withdrawn. Counsel, you're not saying that you want to have resolution on the merits so you could seek fees, right? You seem to completely reject that idea. Well, we're not arguing that here, Your Honor, because it's not necessary to get to that point. As the court knows... Well, then what is your real interest here? The real interest is finality, Your Honor, and consistent interpretation of the Contract Disputes Act. The court applies the voluntary cessation doctrine, as does the federal circuit, and the government has argued for some reason that the voluntary cessation doctrine shouldn't apply to the board. But you want finality because you're afraid of some sort of action that will occur in the future, that the government will come back for those other funds, correct? Well, yes, Your Honor. That's your fear. You're afraid that the government's going to come back after you sometime in the future. Well, and that is exactly why the burden is on the government to prove that it won't. But isn't that speculative? I mean, we don't know if that's the case or not. The record indicates that it's not. But shouldn't the courts wait to rule on this particular issue when, in fact, the government does come back after you? No, Your Honor, because... Isn't that what res judicata is for? Well, Your Honor, res judicata is to ensure the finality of decisions. And the, you know, the mootness doctrine is not only about whether the claim was withdrawn, but whether it is actually fully, whether it is final and whether it is unlikely to recur. That is the government's burden of proof. The government never proved that it was not likely to occur. In fact, it disputed that it was withdrawn in its contract in the argument on the motion for summary judgment below. Isn't there a distinction between a practice that might reoccur and a particular claim which won't reoccur? Well, Your Honor, that's what makes the deferment agreement in this context so nefarious and the government's refusal to change it. Because, you know, when you had both, they had two opportunities to say that the claim was withdrawn and it was unequivocally withdrawn. But what is it that you want the government to say? That they will never bring this claim against you in the future? Yes, Your Honor, that was what was required in the prior cases before the board. That when they were applying the voluntary cessation doctrine, obviously, they required the government to come in and say, you know, not only are we withdrawing this, but we're unequivocally withdrawing it and aren't going to bring it again. What if the government said that today to the court? Well, I think it's too late now, Your Honor. Why? Now we're at the point where the government has, now that would be a new argument under the Chenery Doctrine. Why wouldn't you be satisfied with that? Sorry, Your Honor? Regardless of the legal technicalities, why wouldn't you be satisfied with that? Well, Your Honor, there's, the government has waffled back and forth on this and has, you know, and they have had full opportunities to say that we unequivocally withdraw it. They've had an opportunity to say that our prior claim was unsubstantiated and didn't. So we have an active dispute of challenged conduct. But going back to Judge O'Malley's question, what if the government was to say that now? I don't think it would work now, Your Honor. I think now that's, I think that's disingenuous. And it's not appropriate at this stage to start adding facts. So we have a situation where the board has obviously found a typo based on nothing. But wouldn't that grant the relief you're looking for? Because I asked you, what is it that you're looking for here? And you're looking to assuage a fear, the fear that the government will come after you in the future. The government tells you today, we're not going to come after you in the future. Doesn't that, isn't that case over? Well, Your Honor, it's not over until the summary judgment is entered. Because we have asked for two things. We've asked for the board or the court to find out. But there's no controversy anymore, is there? Yes, Your Honor, there's challenged conduct. The court is certainly, or the board was certainly able to decide that the government claim was unsubstantiated. And that the costs that were previously challenged as not reasonable, allocable, or allowable were actually found to be. But if the government says today, we're not going to pursue you in the future, doesn't that moot all of these arguments you're making? No, Your Honor, it doesn't. Because they can't, this is an administrative, this is a review of an administrative tribunal in a certain posture. And so it doesn't moot it today. It doesn't erase the deferment agreement that's still there and has never been changed. Counsel, why don't we hear from the government now? We'll hear from the government now and save two minutes of your rebuttal time. All right, Your Honor. Mr. Yale. Thank you, Your Honor, and may it please the court. I'd like to address a few points. Just the first point about whether or not this claim had been withdrawn. Opposing counsel talked about earlier briefings. But what was clear when the briefing was concluded was that both parties agreed that the government's claim, the $350,000, that had been withdrawn by the second contracting officer's final decision. And so we think that without that claim, then there's no statutory jurisdiction, there's no live dispute left. And so we think that that covers it. Now, the claim... And, John, would you say that that's a final decision made by the contracting officer? Well, yes. It's a legal binding decision by the contracting officer withdrawing it. Now, there was a little bit of confusion early on whether or not the second contracting officer's final decision applied to all three of the contracts. She specifically stated it applied to the airport contract. But as the briefing demonstrated and as the government said, what we're talking about is it says in that contracting officer's final decision, as the board pointed out, that it applies to the years 2011 to 2013. So they're applying the same rationale. She was accepting an indirect rate in applying that to all three contracts. And so that deals with the claim that was at issue. And that's a final decision. And that should move this case without getting into anything else. Are you saying it's unequivocal or not? Yes, it's unequivocal. Now, there seems to be some – it would appear that Advance Powder is arguing that there has to be something else other than an unequivocal, clear withdrawal of the claim and that there needs to be some sort of guarantee, promise that in the future the claim can't be brought again, but somehow a similar claim based upon the same indirect cost would be brought again. We don't see how that's based on any legal principle. Well, County of Los Angeles v. Davis, the court specifically said that if you're considering voluntary cessation, one of the things you have to determine is whether it can be said with assurance that there's no reasonable expectation that the alleged violation will recur. And given the deferment agreement, or proposed deferment agreement, which seemed to basically back away from all the withdrawal, how can we say that that's satisfied? Well, a couple of points to that, Your Honor. One, there's been no case at the board that specifically accepts the voluntary cessation doctrine. Well, I don't even understand that argument, because how can you say the board applies the mootness doctrine, and case in controversy, but we're going to assume it doesn't apply any of its exceptions? That doesn't really make any sense. Well, there's no case that says that you need to apply all of the specific exceptions, which if you look at the voluntary cessation doctrine, what those are really going to, it's really more of an equitable exception with going to the situation where you have wrongdoing by a party, and they say that they're essentially going to cease that wrongdoing, there's therefore no live controversy, but the Supreme Court has created this exception so that in the future, this wrongful conduct won't just come into place again. Well, why doesn't this decision by the contracting officer that APS says was totally unsupported and yet was demanding payment, why isn't that wrongful, at least from the perspective of APS? Well, a couple of points on that. One, I mean, there's no case that, there is no claim here that there was some sort of a bad faith bringing of this claim. I mean, those are allegations that are being made here, but they had originally stated in their complaint that they had some sort of a good faith and, you know, violation of the duty of good faith and fair dealing. But they dismissed that claim. So the fact of whether or not, at the first point in time, that whether or not the first contracting officer's final decision was based on substantiated facts, I mean, that's, what would be an issue here is whether or not the conduct is the overpayment. And there's no case that sets forth that the bringing of a claim in the absence of some sort of bad faith claim is wrongful conduct. So we think that the voluntary succession doctrine just doesn't apply here. Isn't the point of those exceptions to say there would still be a case of controversy? And that's why there are exceptions to the mootness doctrine? Well, I think to some extent, you know, that that may be the case, but it's in the situation of wrongful conduct and not under a statutory framework about bringing a claim, which the bringing of a claim where it's not been even at all alleged to be some sort of bad faith conduct. Asserts this claim after our decision in this appeal that would APS have any recourse? Well, I mean, there's been no indication that the government would go forth and submit that claim. Are you prepared to represent to the court today that they would not? Well, I mean, we can certainly represent to the court the same way in some of these cases that says that they were, you know, the appellate counsel has pointed to saying that there's no intention that the government would bring a claim in the future. I mean, that's a fair representation. I mean, we're also talking about where years past when this withdrawal happened. But just to be clear, it's, you know, even if you look in our brief, there are cases such as the U.R.S. case that specifically dealt with this situation as to whether or not there needs to be some sort of a promise. So even the board is recognizing that there doesn't need to be a promise to bring in in the future. So we don't think we ever need to get to the point of a promise or not, because there needs to be a claim for jurisdiction and that claim has been withdrawn. And the only real piece of evidence that was brought forth was this draft deferment agreement. And the board considered that. It considered whether or not there was some sort of nefarious intent for that. And it looked at the purpose of it. And as a factual matter, it considered it and just found that it was an error. And if you look at that, I mean, what that really is doing is providing protection for contractors, because what it's saying is they're not going to go out and collect that amount of money. And whether or not that needed to be a different amount is, you know, can be considered an error. But it's certainly not evidence that, you know, there's that the government is going to go forward and sort of whipsaw, as the board pointed out, whipsaw the contractor back and forth. And we also like to point out that, you know, a big purpose of the board is really informal and efficient resolution under the statutory framework of these disputes. And when you look at the chronology of what happened here, you know, there was there was an appeal. And within a relatively short period of time, within five months, you know, the parties had executed a couple of stays to discuss settlement. And the parties had, you know, and arising out of that was the second contracting officer's final decision to, you know, essentially provide the relief really that's being requested here, which is, you know, essentially dealing with the government's claim. And also, and so the notion that there's been some sort of bad faith conduct or some sort of whipsawing, waffling has been portrayed is just not, it's just not accurate. I'd like to very briefly just address the summary judgment point. I mean, summary judgment is just a procedural mechanism. And so, you know, if there's no claims, if those claims have been withdrawn, then there's really nothing left for the board to decide on that. And we think that the board properly didn't reach the issue because it didn't have to reach the issue. Wasn't there a motion that needed to be disposed of? Well, the motion, Judge Loy, so the motion was filed after the contracting officer's final decision and the government's motion to dismiss based upon mootness. And so in response to that, Advanced Power certainly responded that, you know, they indicated that not only was the airport contract that moot based upon the final decision, but essentially that all of these had, all of the claims had been withdrawn, which we later agreed to. So you think the motion was a nullity? But if the motion was a nullity, it still should have been disposed of, shouldn't it? Well, you know, we think that it's moot regardless. And so if there's no jurisdiction, it wouldn't necessarily need to, if there's no jurisdiction to hear the case, then it's more along the lines of some sort of procedural technicality. Well, as the board explained in Murray, once a proper appeal has been filed and jurisdiction attaches, just because something becomes moot doesn't divest the board of jurisdiction. Well, I mean, I think that that was dealing with a different factual scenario, and that's certainly not the rule that the board has been following in the cases like URS or L3 and Dynacorp and the cases that we've been putting forth. You know, the appeal is moot. And if it's a matter of the court, these claims have been withdrawn. There's no basis for summary judgment. We have outstanding motions that just need to be denied. I mean, that's something else. I mean, that's more... We're the ones that should decide the summary judgment motion. And we can't do that. That motion is still outstanding, and it has not been decided, and we cannot decide it. So doesn't that mean we have to send this back down and instruct the board to dismiss this? Well, it can be sent back down with an instruction to dismiss. We are certainly not arguing that you should decide the summary judgment motion. In fact, we argue the opposite based on banks and other cases. My point, though, is that there's nothing left. The basis of the summary judgment motion is gone. And so the government has accepted the rates the claims were withdrawn, and so there's nothing left to decide. We have a whole body of case law in the context of cases or controversy and discussion of what renders something moot. And we really do require a pretty unequivocal showing that the claim could not be revived. And I hear what you're saying as well, but the board can apply case or controversy law to itself and yet not apply the mootness doctrine as the Supreme Court and this court have always articulated it. Well, I think that that is correct, and we explain the rationale because this is different. This isn't a court, and it's also based upon it has a statutory jurisdiction based upon a claim, and that claim no longer exists. And so the board can accept on prudential reason some portion of the mootness doctrine and view it as jurisdictional based upon the existence of a claim, but the board is different because it has this jurisdiction that's based upon the existence of a claim. And so we don't think it's the same scenario where there's instances of wrongdoing or whatnot. I mean, some of the cases that this court has... Isn't the misapplication of the law, isn't that wrongful? The wrongful application of the law does not seem to be akin to the situations where the mootness doctrine was put forth in the first place, which would be wrongfulness like, for example, constitutional violations with discrimination and whatnot. I mean, here, the conduct at issue in the case is really whether or not there was an overpayment or not. It's not the bringing of the claim, which is what's being alleged here. And so it's not a similar and analogous situation. And I hear that my time is up. And so if there's no further questions, I simply ask that the court affirm the judgment of the board. And alternatively, send it back with a request to dismiss the summary judgment motion. Thank you, Mr. Yale. Mr. Baines has a little rebuttal time. Thank you, Your Honor. Your Honor, APS certainly disagrees with the government's argument that APS has not been whipsawed. When you look at the history of this case and the way the Contract Disputes Act is supposed to work, the contracting officer is supposed to administratively decide something based on the facts, not just ignore it and take it directly to litigation or take it directly to a final decision that has to then be appealed and then litigation entered. But that's what happened here. We have never abandoned the argument that the claims that the government made here were always unsubstantiated, whether it be through bad faith or just simply a breach of the contract itself or a misinterpretation of the cost accounting standards and the applicable cost principles. So we would suggest that the purpose of this court is to ensure the uniformity of decisions under the Contract Disputes Act and to ensure that contracting officers perform their duties diligently and that they ensure that these things are substantiated before we even get into litigation. The problem here is that the contracting officer did not do that and when we got into litigation, the contracting officer ultimately looked at the same evidence as before and only then after recommendations from counsel and lots of argument and litigation that went on, they amended the claim, not withdrew it. So there's no unequivocal withdrawal here and there's no promise that this challenge conduct won't occur and in terms of jurisdiction, we agree with Judge O'Malley that once you apply mootness doctrines or doctrines like this, that this court interprets under the Contract Disputes Act that they should be applied uniformly and with all elements. The board has certainly done that since the cases and they've done that in the cases of the government sites including Quimba where they made the government promise that they wouldn't bring it again or the other cases where the parties just simply didn't oppose that it was moot. The most recent case on this is L3 by Judge Clark where the government had a claim and that site is 19-1 BCA 37288 but March 19, 2019. But in that case, the board retained jurisdiction on that point after the withdrawal of the COFD because the board said there was jurisdiction. Now, I don't think jurisdiction ends especially when there's challenge conduct like this that the government has not proven won't recur and that it will not do again. And with that, your honors, we will stand on our briefs and ask that I know the court has already said or already may believe that it does not have the power to enter summary judgment but on that last point, I would just suggest that the government has not stated any material facts and has not disputed that these claims were unsubstantiated in any material way. So on that, we'll stand on the briefs and we thank you for the panel's time today. Thank you, counsel. We will do our best to figure it out. The case is submitted. Thank you, your honors, and have a good day. The honorable court is adjourned until tomorrow morning at 10 a.m.